IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ELIZABETH ANN PETTIS**                                                                   **PLAINTIFF**

**v.**                                                                **CIVIL ACTION NO.: 3:24-cv-227-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                                **DEFENDANT**

**ORDER**

Plaintiff applied for DIB under Title II of the Social Security Act (the Act), 42 U.S.C. § 423(d)(1)(A), on January 5, 2021, alleging disability since November 13, 2020, due to blindness or low vision, "feet," "rotator cup tear," rheumatoid arthritis, diabetes, fatty liver, "back," obesity, pain, depression, hyperlipidemia, eczema, hypertension, and memory issues. Tr. 24, 86, 95-96, 103, 210-211, 230. The Commissioner denied Plaintiff's application initially and, pursuant to Plaintiff's request, an ALJ held a telephonic hearing on September 26, 2023, at which Plaintiff, represented by counsel, and an impartial vocational expert testified. Tr. 40-67, 106-109, 123-126, 128-131. The ALJ issued an unfavorable decision on October 31, 2023. Tr. 21-33. On June 3, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. Tr. 6-16. For the reasons below, the undersigned finds that the ALJ's decision shall be **AFFIRMED.**

**Issues on Appeal:**

Plaintiff raises two issues on appeal: 1) She contends the ALJ concluded, without substantial evidence to do so, that Plaintiff's right shoulder rotator cuff impairment was non-severe at Step Two; and 2) that there is not substantial evidence to support a RFC permitting a full range of medium work.

**Standard of Review:**

It is long established that this Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court explained:

> The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The ALJ must provide an accurate and logical bridge between the evidence and his RFC finding. *Price v. Astrue*, 401 Fed. Appx. 985, 986 (5th Cir. 2010). However, the Fifth Circuit has been clear that the ALJ "does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination." *Id.*

**Law and Analysis**

Issue 1: The ALJ did not err when he concluded that Plaintiff's right shoulder rotator cuff impairment was non-severe at Step Two.

In support of Issue 1, Plaintiff contends the ALJ did not even mention her right rotator cuff impairment at Step Two of the sequential evaluation process. In fact, Plaintiff contends the ALJ fails to discuss any medical evidence relevant to this impairment at Step Two, or anywhere else in the decision (particularly including the physical therapy records), and the ALJ ignored her testimony during the hearing that she experiences an "aching pain" in her right shoulder which travels "all the way down my forearm," and that performing activities involving lifting weight makes this pain worse. In short, the Plaintiff argues there is no substantial evidence to support the ALJ's non severe finding at Step Two related to her shoulder issues.

In response to this argument, the Commissioner asserts that nowhere in the medical evidence was Plaintiff ever diagnosed by a physician with a rotator cuff impairment on her right shoulder. Physicians, however, did assess Plaintiff with right shoulder osteoarthritis on December 28, 2020, April 19, 2021, and August 9, 2021. Tr. 384, 612; Tr.-2 117, 192. And the ALJ included osteoarthritis as one of Plaintiff's severe impairments. Tr. 26-28.

Further, the Commissioner notes that the ALJ did discuss Plaintiff's right shoulder complaints in the RFC section of his decision, noting that amid Plaintiff's reports of back and shoulder pain, a March 11, 2022, x-ray of the right shoulder and spine revealed only mild acromioclavicular osteoarthritis, suspected possible mildly decreased subacromial distance, and dystrophic calcification in the axillary recess region of the joint capsule which was "likely secondary to remote soft tissue injury." Tr. 30; Tr.-2 257, 331-333. The ALJ also noted that Plaintiff told her physician of her right shoulder pain in December 2022. Tr. 30; Tr.-2 690. Nevertheless, a physical exam conducted that day presented no abnormal findings.

The Commissioner also points out that in her brief, the Plaintiff, while discussing some portion of her physical therapy records, omits the references therein that support the ALJ's decision, such as the fact that at her second (of a total of ten) physical therapy visit on June 21, 2021, Plaintiff reported that "her shoulder is feeling pretty good today." Tr.-2 578. On June 26, 2023, Plaintiff reported that "her shoulder is feeling pretty good overall" and she had no new complaints or concerns. Tr.-2 583. At the end of her physical therapy sessions on July 12, 2023, and July 19, 2023, Plaintiff reported that her soreness was a two on a scale of one to ten. Tr.-2 609, 614.

Finally, the Commissioner asserts that contrary to Plaintiff's argument, the ALJ ignored her testimony regarding her right shoulder; in fact, the ALJ specifically acknowledged her testimony regarding a right "rotator cuff injury" and her allegations of radiating right upper extremity pain. Tr. 29. The ALJ determined, though, that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms was not entirely consistent with the medical evidence and other evidence in the record. Tr. 31. In support of that finding, the Commissioner cites Plaintiff's testimony that she worked after her alleged onset of disability (Tr. 51-53, 271) at a daycare for six months in 2022, every day, all day, but had to quit the job because lifting the babies bothered her. Tr. 51, 54, 271. She also testified that she was currently working as a home health sitter ("sitting with a little lady for four hours") a day for four days per week, and that she was having no problems with that work. Tr. 52-53. Plaintiff also explained that she was able to live by herself, prepare simple meals, do some housework including laundry, ironing, and cleaning for "about an hour," drive a car, and shop in stores for personal items and groceries. Tr. 237-244.

Issue 2: There is substantial evidence to support a RFC permitting a full range of medium work.

While the Plaintiff argues it is "inconceivable" that the ALJ would have found her capable of a full range of medium work if he had considered her right shoulder pain. (Pl. Br. 11), the Commissioner points out that the ALJ *did* consider her right shoulder osteoarthritis and found it a severe impairment. Tr. 26-28. And he found she could perform a full range of medium work based on medical findings that did not support further limitations. Tr. 29-31.

The Commissioner also stresses that RFC is defined as "the *most* an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks." 20 C.F.R. § 404.1545 (emphasis added); SSR 96-8p, 1996 WL 374184. The ALJ found Plaintiff could perform her past work as a general office clerk, food salesclerk, and food service worker, Tr. 31, all of which are light exertional level jobs. Tr. 31. Pursuant to 20 C.F.R. § 404.1560(b), a claimant is "not disabled" if she can perform the actual functional demands of her past relevant work, or as it is generally performed in the national economy.

Lastly, Plaintiff argues that the ALJ's determination that the State agency medical consultant Dr. Paul Sporn's opinion that Plaintiff would have postural and environmental limitations (which according to the testimony of a VE would rate her as disabled), was unpersuasive is not supported by substantial evidence since Dr. Sporn's opinion was supported by consultive examiner Dr. William D. Wallace's finding. During Dr. Wallace's examination, he found that "[i]t is very difficult for her to squat and rise as well as walk on heels or toes . . . [s]he could not hop on either foot," and that Ms. Pettis "has pain with mild-to-moderate ambulation."

And, as for the ALJ's finding that Dr. Wallace's ultimate assessment that Plaintiff had no postural limitations was persuasive, Plaintiff argues it is without support of substantial evidence. Plaintiff contends that such a finding was contradicted by Dr. Wallace's own exam finding of pain

with ambulation, inability to hop on one foot, and difficulty squatting/rising. The Commissioner, on the other hand, points to Dr. Wallace's opinion that Plaintiff had no limitations with sitting, standing, or walking, and had no significant limitations with lifting or carrying weight. Tr.-2 265. He also found no limitations on bending, stooping, crouching, and squatting; no limitations on reaching, grasping, handling, fingering, and feeling; and no relevant visual, communicative or workplace environmental limitations. Tr.-2 265. The ALJ found this opinion persuasive, as it was supported by Dr. Wallace's examination findings of no deficits, weaknesses, spasms, or abnormalities. Tr. 30. Further, Dr. Wallace found that Plaintiff had no palpable muscle spasms; had full muscle strength in all muscle groups; straight leg raises were negative bilaterally while in the sitting and supine positions; and demonstrated normal range of motion in all muscle groups. Thus, the undersigned finds that issue two does not meet the threshold for reversible error.

**Conclusion**

In the instant case, I find, as described in some detail above, that while there are certainly some places in the medical records which Plaintiff understandably highlights to advance her grounds for appeal here, the ALJ relied, for his conclusions, on specific objective medical evidence to support his Step Two findings and the RFC. In other words, there exists both substantial evidence and an accurate and logical bridge between the evidence and the ALJ's findings. And, of course, it is well established that reweighing of the evidence on appeal is impermissible.


Accordingly, I find that there is no reversible error, and the ALJ's decision shall be and is hereby **AFFIRMED.**

**SO ORDERED**, this the 18th day of March, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**